JAMES W. M. HARVEY *vs.* WALTER CHAPMAN & others.

Essex.   January 8, 1917. — March 2, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CARROLL, JJ.

*Malicious Interference.   Labor Union.   Boycott.*

A retail grocer and provision dealer may maintain a suit in equity to enjoin the officers and members of a labor union, with whom he has no trade dispute, from boycotting the plaintiff's business by means of a false statement that the plaintiff's employees are out on a strike, and from seeking by picketing, by displaying banners and by the distribution of circulars to compel the plaintiff to discharge his employees or to coerce them into paying fees demanded of them by the defendants' association, and in such suit he also may recover damages for such unlawful interference.

BILL IN EQUITY, filed in the Superior Court on October 11, 1915, by a retail grocer and provision dealer having his place of business on Union Street in Lynn against the officers and members of a voluntary association called the Lynn Grocery and Provision Clerks' Association, to enjoin the defendants from unlawful interference with the plaintiff's business and with his employees in the manner described in the opinion and to recover damages for the defendants' unlawful acts.

The case was referred to a master, who filed a report in which he found the facts that are stated in the opinion and found that, if the plaintiff was entitled to recover any damages, he had sustained damages from the acts of the defendants amounting to $100.

The defendants filed exceptions to the master's report and the case came on to be heard before *Hall*, J., upon the pleadings, the master's report and the exceptions thereto. The judge made an order overruling the exceptions to the master's report and confirming the report, and, at the request of the parties, reserved and reported the case for determination by this court, such decree to be entered as justice and equity might require.

The circular letter, which is referred to in the opinion as having been mailed in behalf of the defendants to sixty-seven labor unions in Lynn, was as follows:

"The Lynn Grocery and Provision Clerks' Association.
Organized, October, 1909
Allied Printer
Union
Trades          Council 48
Label
Boston

Meetings First and Third Tuesdays of each Month Sharon Hall, 61 Exchange Street.

Lynn, Mass., Aug. 1, 1915.

Fellow Workers:

We wish to inform our fellow workers of Lynn that we have a strike on at the store of J. W. Harvey, 147 Union St. The cause of the trouble comes from the fact that Mr. Harvey refuses to

live up to his contract with us as regards employing members of our Association.

We have tried for several months to get the application of two suspended members, but to no avail. We called out two members on July 9th and one responded, and one remained at work. We are now paying strike benefits to the brother who is out, and are under the expense for the bannering of the store. Any aid you can give us in this matter will be greatly appreciated by us.

Fraternally yours,

Leo E. Beauchamp<br>Secretary

Lynn Grocery and Provision Clerks Ass'n."

*S. Parsons,* for the defendants.

*F. E. Shaw,* for the plaintiff.

DE COURCY, J. We must consider the facts to be those established by the report of the master. The defendants took exceptions to two of his findings: the first, that any contractual relation existing between the plaintiff and the defendants was terminated by mutual consent on or about June 1, 1915; the second that the purpose of the defendants in doing the acts complained of was as hereinafter stated. We cannot revise these findings in the absence of the evidence on which they were based. They are entirely consistent with the other facts and with the portions of the evidence set out in the report. The exceptions must be overruled. *Cook* v. *Scheffreen,* 215 Mass. 444.

The leading material facts found by the master are the following: The plaintiff is a retail grocer and provision dealer in Lynn. The defendants are officers of the Lynn Grocery and Provision Clerks' Association, and are sued as officers and also as individuals representing the other numerous members. On the recommendation of the executive board, later accepted by the association, a strike was called to take effect at the plaintiff's store on Friday noon, July 9, 1915. None of the three clerks then employed by the plaintiff left his employ at or since that time. Almost every week day since July 9, the defendants have caused a boy or boys carrying banners to parade constantly back and forth in the streets, and to display them in front of the plaintiff's store, the printing

on the banners stating that "Friends and organized labor patronize stores displaying this union card. The property of and issued by the Lynn Grocery and Provision Clerks' Association."

Under date of August 1, 1915, the defendant Beauchamp as secretary, mailed to sixty-seven labor unions in Lynn a circular letter, which is printed above, stating that the association had a strike on at the plaintiff's store. Since the appointment as business agent of the defendant Perrigo, referred to in the record as Perry, he has picketed the plaintiff's store almost daily; approaching and speaking to the customers who were going in and out, and stating to them "that the store was non-union, and a strike was on, and all labor men ought not to trade there;" "that it was an unfair place," etc. On being requested by one customer to stop addressing him, Perry said, "I will stop you every time I see you coming out of the store;" and he then followed this person to his home.

On August 3, 1915, the committee on charges reported that "Brother Reardon [one of the three clerks working for the plaintiff] be suspended and $10 initiation fee be placed as a fine on his application." There is no provision in the constitution of said association authorizing the imposition of a fine. The master finds that "the purpose of the so called fine of $10 imposed by said Association on Reardon was to intimidate him and coerce him to leave the employment of the plaintiff." He further finds "that there has been no trade dispute between the defendants, or any of the members of said association, and the plaintiff over hours of labor or over wages; but that the entire dispute has arisen over the attempts by the defendants and by the members of said association to force Beaton and Roberts to pay their back dues and initiation fees amounting in all to $4 each, and continue as members of the association."

The final finding on the merits is this: "On all the evidence and from the facts previously found by me, I find that the defendants and the other members of the association have authorized, ratified and approved all the acts herein set forth done by Sutton and by Perry as business agents, and that the purpose of all these acts, and the purpose of the so called strike has been to intimidate the plaintiff and to force him through injury or fear of injury to his business either to discharge Beaton, Roberts and Reardon, or

to compel them as a condition of remaining in his employment to pay to the association, of which the defendants are officers, the sums of money demanded of them by said association for reinstatement as members thereof."

It needs no discussion to show that such intentional and harmful interference with the plaintiff's business renders the defendants liable, unless there appears a legal justification for their conduct. No such justification is disclosed. There was no real trade dispute between the parties. As there was in fact no strike at the plaintiff's store at any time since July 9, 1915, it is unnecessary to consider what the defendants properly might do under a legal strike. See *Cornellier* v. *Haverhill Shoe Manufacturers' Association,* 221 Mass. 554; *M. Steinert & Sons Co.* v. *Tagen,* 207 Mass. 394. The validity and effect of the alleged agreement between the parties is likewise immaterial, because of the finding that if ever in force it had been terminated by mutual consent. See *Hoban* v. *Dempsey,* 217 Mass. 166. The peaceful persuasion act, (St. 1913, c. 690,) need not be considered, as it does not purport to justify attempts to persuade which are a part of an unlawful or actionable conspiracy. The boycotting of the plaintiff's business by the defendants was based upon the false statement that his employees were out on a strike, and it was carried on for the purpose of compelling the plaintiff, with whom they had no trade dispute, to discharge his employees or to coerce them to pay the sums of money demanded of them by the association. Plainly it was unlawful. *Burnham* v. *Dowd,* 217 Mass. 351, and cases cited. *New England Cement Gun Co.* v. *McGivern,* 218 Mass. 198.

The plaintiff argues that the damages awarded by the master are inadequate. But we cannot revise that finding in the absence of the evidence. In view of the persistent unlawful acts of the defendants even while the case was on trial, and their intention to continue the same unless restrained by the court, the plaintiff is entitled to have them enjoined from proclaiming the existence of a strike of the plaintiff's employees, and from interfering with his business by keeping pickets and displaying banners about his store for the purpose of preventing the public from trading with him. He is also to recover from the defendants the sum of $100 and his costs of suit, and to have execution therefor.

*Decree accordingly.*