QUINTON'S MARKET, INC. *vs.* JAMES PATTERSON & others.

Middlesex.    January 3, April 3, 1939. — June 5, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & COX, JJ.

*Labor.    Unlawful Interference.    Labor Union.    Picketing.    State Labor
Relations Act.    Equity Jurisdiction,* Labor disputes.    *Equity Pleading
and Practice,* Parties, Damages.    *Words,* "Labor dispute," "Lawful
trade dispute."*

Peaceful picketing by members of a labor union causing damage to the proprietor of a shop, whose employees were not members of the union and had no dispute with him, was unlawful where it appeared that its sole purpose was to make easier maintenance of a weekly half holiday in competing stores employing union members by compelling the proprietor of the picketed store to observe it.

The law as to what constitutes justification of peaceful picketing by members of a labor union has not been changed in favor of the picketers by the amending provisions of St. 1935, c. 407, or of St. 1933, c. 272.

A bill in equity to enjoin unlawful peaceful picketing by members of a labor union which named officers of the union and certain members and plainly showed an intent to join all individual members as defendants was treated in this court as a class bill although there was no specific averment that the members were too numerous to be sued individually and that the named defendants were adequately representative of the entire membership.

A final decree in a suit in equity to enjoin unlawful peaceful picketing by members of a labor union and for damages should have assessed damages only against members who were found to have participated in, authorized or ratified the unlawful acts.

BILL IN EQUITY, filed in the Superior Court on January 20, 1938.

A final decree was entered by order of *M. Morton*, J. The defendants appealed.

*H. Wise*, for the defendants.

*J. J. Sullivan*, for the plaintiff.

QUA, J. The plaintiff, a retail dealer in meats and groceries at Davis Square in Somerville, has obtained in the Superior Court against the officers and members of Meat Cutters, Provision Managers and Food Store Employees Union, Local No. 592, hereinafter called the union, a decree enjoining the picketing of the plaintiff's store and for damages.

A brief statement of certain decisive findings of the master will suffice for the purposes of this opinion. The union was greatly interested in having meat markets and grocery stores close for a half holiday on Wednesdays throughout the year. It and several other labor unions had a written contract with the First National Stores, Inc. That company, in general, closed its stores Wednesday afternoons, but kept open its store near Davis Square, under a provision in the contract that it might do so when its competitors "in any area" remained open. The plaintiff and several others were competitors of the First National Stores, Inc. in the vicinity of Davis Square. The plaintiff remained open on Wednesday afternoons. Members of the union asked the plaintiff's manager to close the plaintiff's store on those afternoons. He promised to sign an agreement to that effect if all the plaintiff's competitors would sign first. Shortly thereafter certain of the named defendants, together with persons whose names do not appear in the bill, began picketing the plaintiff's store. The number of pickets increased until there were twenty. They moved in a circle around the eight-foot sidewalk, stepped into the vestibule of the store, spoke to every person who wanted to enter the store, called out that the store was unfair to its help and to organized labor, and after about three hours were dispersed by the police for obstructing the sidewalk. "There was no violence or rioting, no breach of the peace

and no one was arrested." "Most of the customers went in. Some turned away and did not go in." Damage to the extent of $100 was caused to the plaintiff's business.

None of the plaintiff's employees was a member of the union. There was no dispute of any kind between the plaintiff and its employees. They were content to work Wednesday afternoons, and the plaintiff was content to have them do so.

It has long been settled by a series of decisions in this Commonwealth that at common law such a combination as is here shown, designed to injure a plaintiff's business and having that effect, is unlawful and actionable unless justified as being in itself the exercise by the defendants of an equal conflicting or competing right of their own. The cases are collected in *Yankee Network, Inc.* v. *Gibbs,* 295 Mass. 56, at pages 59–60. It is also settled that in order to justify the infliction of intentional injury and to escape the liability which follows from the ordinarily tortious quality of such an act, the right of their own which the defendants claim to exercise must bear a direct, and not a merely remote or secondary, relation to their own lawful advantage. *Plant* v. *Woods,* 176 Mass. 492, 502. *Berry* v. *Donovan,* 188 Mass. 353, 359.

In developing and applying the principle last above stated it has been held successively that the benefits to be derived by the defendants from a secondary boycott, from a sympathetic strike, or from a combination for the purpose of securing a closed shop, merely strengthening the union for future contests, preventing the use of nonunion material, or maintaining a scale of wages in general as distinguished from the wages of the participants themselves do not justify the intentional infliction of injury upon the plaintiff. *Pickett* v. *Walsh,* 192 Mass. 572, 587. *Reynolds* v. *Davis,* 198 Mass. 294, 300. *Folsom* v. *Lewis,* 208 Mass. 336. *Burnham* v. *Dowd,* 217 Mass. 351, 356. *New England Cement Gun Co.* v. *McGivern,* 218 Mass. 198. *Harvey* v. *Chapman,* 226 Mass. 191. *A. T. Stearns Lumber Co.* v. *Howlett,* 260 Mass. 45, 65, 70. *New England Wood Heel Co.* v. *Nolan,* 268 Mass. 191, 198. *Armstrong Cork & Insulation Co.* v.

*Walsh,* 276 Mass. 263, 272. So in the very recent case of *Simon* v. *Schwachman,* 301 Mass. 573, 577, we held, citing many cases, that under the common law of this Commonwealth "the right to strike and maintain pickets against an employer is deemed the right of his employees only." In addition to the cases cited in *Simon* v. *Schwachman,* the following very recent cases in other jurisdictions tend in the same direction: *Hotel, Restaurant & Soda Fountain Employees Local Union No. 181* v. *Miller,* 272 Ky. 466; *Keith Theatre Inc.* v. *Vachon,* 134 Maine, 392; *Feller* v. *Local 144, International Ladies Garment Workers Union,* 121 N. J. Eq. 452; *Moreland Theatres Corp.* v. *Portland Moving Picture Machine Operators' Protective Union, Local No. 159,* 140 Ore. 35; *Culinary Workers' Union No. 331* v. *Fuller,* 105 S. W. (2d) 295 (Texas Civ. App.); *Safeway Stores, Inc.* v. *Retail Clerks' Union, Local No. 148,* 184 Wash. 322. There are also cases tending in the opposite direction. See, for example, *Exchange Bakery & Restaurant, Inc.* v. *Rifkin,* 245 N. Y. 260.

It is clear from what has been said that under the law as it has existed over a long period of time, unless it is changed by valid statute, the indirect benefit to the union of making it easier to maintain the Wednesday half holiday in competing stores where its members were employed did not justify the intentional inflicting of harm upon the plaintiff, who employed no members of the union, and whose employees were satisfied with the conditions under which they worked.

The law as to justification has not been changed in the defendants' favor by the various amendments introduced by St. 1935, c. 407. That statute is entitled "An Act relative to injunction and contempt procedure in labor disputes." It defines the term "labor dispute," states under what circumstances a case shall be held "to involve or to grow out of a labor dispute" and who shall be held to be "a person participating or interested in a labor dispute," all "For the purposes" of certain specified sections of the statutes, all of which sections (except possibly G. L. [Ter. Ed.] c. 149, § 20B) relate wholly to jurisdiction, prelimi-

nary conditions, and procedure in reference to injunctions and contempts, and none of which purports to change the law as to what constitutes a lawful combination. This aspect of the case is fully covered by the decision in *Simon v. Schwachman*, 301 Mass. 573, 580.

The law as to what constitutes a lawful combination has not been changed in the defendants' favor by the addition to G. L. (Ter. Ed.) c. 149, § 24 (the "peaceful persuasion act") of the clause beginning "nor for attending, in the course of a lawful trade dispute . . ." St. 1933, c. 272. No sound argument can be made that the words "lawful trade dispute" as they appear in the amended section were intended to include disputes that at common law could not lawfully become the subject of combination or to change the established rule that the statute applied only where there was an existing "lawful" dispute. *Samuel Hertzig Corp.* v. *Gibbs*, 295 Mass. 229, 231. *Harvey* v. *Chapman*, 226 Mass. 191, 195. *Martineau* v. *Foley*, 231 Mass. 220, 223. *Simon* v. *Schwachman*, 301 Mass. 573, 576–577. In the case at bar the only trade dispute was that which grew out of the attempt of the defendants to make the plaintiff close on Wednesday afternoons.

The definition of "labor dispute" contained in the State Labor Relations Act (now G. L. [Ter. Ed.] c. 150A, § 2 [7])* applies only "When used in" that act, and does not affect this case. *Simon* v. *Schwachman*, 301 Mass. 573, 580–581.

From what has been said it follows that the substantive law by which the defendants' conduct is to be tested in this case has not been changed; that the picketing was a tort against the plaintiff; and that there is liability for the damage which the plaintiff sustained.

We have preferred to rest our opinion upon the larger aspects of the case upon which the parties have argued it. No inference should be drawn that because we have not discussed the manner in which the picketing was carried on, we are satisfied that it was in conformity with the peace-

---

* St. 1937, c. 436, by its § 16, was denominated the State Labor Relations Act. Its provisions became a part of the General Laws as c. 150A by St. 1938, c. 345, § 2, and by its § 12 that chapter was denominated the "State Labor Relations Law." — REPORTER.

ful persuasion act, G. L. (Ter. Ed.) c. 149, § 24, as amended by St. 1933, § 272.

A question has been raised as to parties. The bill not only names certain individuals as president, secretary, treasurer and recording secretary, and members of the union, but also plainly shows the intent of the pleader to join all individual members as parties defendant. In this respect the case differs from *Pickett* v. *Walsh*, 192 Mass. 572, 590. Even if the bill is defective in not alleging specifically that the members are too numerous to be sued individually, and that the named defendants are adequately representative of the entire membership, we think there was enough to indicate to the defendants that the suit was brought on the theory of a class bill putting forth the named defendants as fairly representative of the entire class, and we also think that the findings of the master show the impossibility of joining all by name and support the inference that those named were in fact fairly representative of the others. It is too late now to raise merely formal objections to the bill. *George N. Pierce Co.* v. *Beers*, 190 Mass. 199, 204. *Low* v. *Low*, 197 Mass. 158. *Clough* v. *Cromwell*, 254 Mass. 132, 134, 135. *Breen* v. *Burns*, 280 Mass. 222, 227.

There is, however, a difficulty of substance in that the final decree, as we construe it, attempts to impose liability for damages upon all defendants, that is, upon all members of the union, although the master does not find that all participated in, authorized, or ratified the picketing and does not find the authority of those who did so act to bind the others. *Sweetman* v. *Barrows*, 263 Mass. 349, 355. *Sullivan* v. *Barrows, ante*, 197. See G. L. (Ter. Ed.) c. 149, § 20B, inserted by St. 1935, c. 407, § 1. Compare as to injunctions, G. L. (Ter. Ed.) c. 214, § 9A (1) (a), inserted by St. 1935, c. 407, § 4. Nor does the master find the names of all the members against whom damages are awarded, so that they can be inserted in the decree and execution issued against them. *Malloy* v. *Carroll*, 287 Mass. 376, 392. For these reasons, unless further findings shall be made, a decree for damages can run only against those defendants who, as the master has already

found, participated in, authorized, or ratified the picketing.

By reason of the provisions of G. L. (Ter. Ed.) c. 214, § 9A (1) and (5), inserted by St. 1935, c. 407, § 4, requiring in a case involving a "labor dispute," the hearing of "the testimony of witnesses in open court" and "findings of fact made and filed by the court," a question might arise as to whether the court had jurisdiction to enter a decree for an injunction upon findings contained in a master's report. But in its supplemental brief the plaintiff states that the issuance of an injunction has become moot "since the objectionable activity has ceased and is not now immediately threatened," and the plaintiff "agrees to the dissolution of the injunction." Because of this waiver no discussion on this point is necessary, and the injunction will be omitted from the final decree. The sections last cited do not affect the jurisdiction of the court to enter a decree for damages.

The order denying the defendants' unnecessary and anomalous motion for the entry of a final decree dismissing the bill, treated as an interlocutory decree, is affirmed. For the reasons stated the final decree is reversed, and the cause is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*Ordered accordingly.*